**Edward SCHULTZE, Personal Representative of the Estate of Velma C. Schultze, Appellee,**

v.

**LANDMARK HOTEL CORPORATION, Defendant,**

and

**Joseph F. Fellows, Des Moines Internists, P.C.; Kevin J. Cunningham, Sean D. Cunningham, Rick L. Wilkens, and Iowa Methodist Medical Center, Appellants.**

No. 89–1486.

Supreme Court of Iowa.

Nov. 21, 1990.

Marsha K. Ternus of Bradshaw, Fowler, Proctor & Fairgrave, Des Moines, for appellant Joseph F. Fellows.

Thomas A. Finley of Duncan, Jones, Riley & Finley P.C., Des Moines, for appellant Iowa Methodist Medical Center.

Robin L. Hermann of Patterson, Lorentzen, Duffield, Timmons, Irish, Becker & Ordway, Des Moines, for appellants Des Moines Internists, P.C., Kevin J. Cunningham, Sean D. Cunningham, and Rick L. Wilkens.

Thomas P. Slater of Meyer, Slater & Bauer, Des Moines, for appellee.

Considered by McGIVERIN, C.J., and SCHULTZ, LAVORATO, SNELL, and ANDREASEN, JJ.

SCHULTZ, Justice.

In this appeal the issue is whether the statute of limitations for medical malpractice actions for wrongful death under Iowa Code section 614.1(9) (1987) [1] begins to run on discovery of the death or on discovery of the wrongful act that caused the death. The district court held that the limitation period commenced on the date the medical treatment factors relating to the wrongfulness of the death are known, or should have been known through the use of reasonable diligence. We hold that the limitation period in subsection 9 commences on the date the death is discovered.

On May 27, 1987, Velma C. Schultze was admitted to Iowa Methodist Medical Center (hospital) for the care and treatment of a hip fracture she had sustained during a fall at a hotel where she was staying. She died on June 13. On September 8, plaintiff's attorney received the decedent's medical records from the defendant hospital.

On June 30, 1988, Edward Schultze, as personal representative of the decedent and as her spouse, sued the hotel for her wrongful death and for loss of consortium on behalf of himself and their children. A year later, on June 30, 1989, plaintiff amended his petition by adding a division including new defendants, the hospital and the physicians who treated his wife prior to her death, alleging that they committed malpractice which caused his wife's death.

The new defendants moved for summary judgment on the ground that the statute of limitations in subsection 614.1(9) had expired on June 13, 1989, two years from the date of plaintiff's wife's death. The district court overruled this motion concluding that the limitation period commenced when "a claim for death is ascertainable." The court determined that this period is the date plaintiff received the medical records pertaining to the care and treatment rendered by the defendant-physicians and learned of the alleged acts of medical malpractice.

We conclude that the limitation period commences on the date plaintiff knew his wife died, June 13, 1987. Consequently, we hold that the limitation period had passed and must reverse and remand for a dismissal of the action brought against the parties added in the amended action.

I. *Construction of subsection 9.* Plaintiff defends the district court ruling by explaining that rules of statutory construction must be employed so that the limitation period commences on the discovery of the wrongful act rather than on discovery of decedent's death. He argues that the words "injury" and "death" must be pre-

---

1. The pertinent text of section 614.1 governing the statute of limitations for medical malpractice actions provides as follows:

   Actions may be brought within the times herein limited, respectively, after their causes accrue, and not afterwards, except when otherwise specially declared:

   . . . .

   9. *Malpractice.* Those founded on injuries to the person or wrongful death against any physician and surgeon, osteopath, osteopathic physician and surgeon, dentist, podiatrist, optometrist, pharmacist, chiropractor, or nurse, licensed under chapter 147, or a hospital licensed under chapter 135B, arising out of patient care, *within two years after the date on which the claimant knew, or through the use of reasonable diligence should have known, or received notice in writing of the existence of, the injury or death for which damages are sought* in the action, whichever of the dates occurs first, but in no event shall any action be brought more than six years after the date on which occurred the act or omission or occurrence alleged in the action to have been the cause of the injury or death unless a foreign object unintentionally left in the body caused the injury or death.

   (emphasis added).

ceded by the modifiers "personal" and "wrongful" respectively in subsection 9 so that it reads: "[W]ithin two years after the date on which the claimant knew ... of, the [personal] injury or [wrongful] death...." Plaintiff asserts that this construction is necessary "to effect the intent of the legislature thereby giving meaning to the discovery rule."

This construction, as applied to the facts of this case, would commence the limitation period at the time plaintiff received his wife's medical records and learned of the alleged wrongfulness of her death, rather than on the date of her death. To determine if plaintiff's claim has merit we first examine the plain language of subsection 9.

A. *Plain language.* Initially, we examine the statutory language to determine if it is ambiguous and requires construction. Subsection 9 provides that an action for medical or hospital malpractice must be commenced "within two years *after the date on which the claimant knew of the existence of, the injury or death for which damages are sought....*" (emphasis added). This language plainly communicates that malpractice actions for wrongful death must be brought within two years after the claimant knew of the death.

■ When the terms of a statute are unambiguous, a court ordinarily need not resort to rules of statutory construction. *See Casteel v. Iowa Dep't of Transp.*, 395 N.W.2d 896, 898 (Iowa 1986). The Pennsylvania supreme court stated that "the requirement that a wrongful death action be brought within two years after a definitely established event,—'death'—leaves no room for construction." *Anthony v. Koppers Co.*, 496 Pa. 119, 124, 436 A.2d 181, 184 (1981). We find the court's reasoning persuasive. *See also Trimper v. Porter–Hayden*, 305 Md. 31, 34, 501 A.2d 446, 448 (Ct.App.1985) (plain language of wrongful death statute precluded application of discovery rule when the relevant statutory language stated that "[a]n action shall be filed within three years after the death of the injured person").

The plaintiff does not claim that subsection 9 is ambiguous, but he urges that the word "death" must be interpreted in the context of our tort system and the discovery rule. The first sentence of subsection 9 reads "[t]hose founded on injuries to the person or *wrongful* death...." (emphasis added). However, later in subsection 9 plaintiff asks us to precede the word "death" with the modifier "wrongful" where the legislature did not include it. Plaintiff essentially asks us to insert a word into subsection 9 to support his claim that the limitation period commences upon the discovery of the wrongful act. However, the addition of the word "wrongful" would be inconsistent with established rules of statutory construction.

■ Ordinarily, we may not, under the guise of judicial construction, add modifying words to the statute or change its terms. *Kelly v. Brewer*, 239 N.W.2d 109, 114 (Iowa 1976); *State v. Prybil*, 211 N.W.2d 308, 311 (Iowa 1973); *Northern Natural Gas Co. v. Forst*, 205 N.W.2d 692, 696 (Iowa 1973); *Maguire v. Fulton*, 179 N.W.2d 508, 510 (Iowa 1970). As an exception to this rule, we have made changes in legislative enactments to correct inadvertent clerical errors or omissions which frustrate obvious legislative intent. *Jones v. Iowa State Highway Comm'n*, 207 N.W.2d 1, 3–4 (Iowa 1973). Judicial alteration has also been allowed to avoid absurd, meaningless, irrational or unreasonable results. We exercise extreme caution and are reluctant to adopt such changes. *Id.*

In this case, we see no sign of error or omission by the legislature in enacting subsection 9. Neither do we find any other reason for judicial alteration. It is logical that a statute of limitations would prescribe a time certain for the commencement of the limitation period. In common usage the word "death" refers to the end of life, a time certain. The subsection standing alone is intelligible and the meaning is clear. Under these circumstances, our role requires that we not alter the terms prescribed by the legislature with the insertion plaintiff suggests.

In summary, we abide by the express language of the subsection "unless such construction would be inconsistent with the

manifest intent of the [legislature]." Iowa Code § 4.1 (1987). We next examine the legislature's intent underlying the enactment of subsection 9.

B. *Legislative intent.* We have previously held that our interpretation of a statute must effect the legislature's intended purpose. *See Havill v. Iowa Dep't of Job Serv.,* 423 N.W.2d 184, 186 (Iowa 1988) (stating that we must consider both the language used and the object sought to be accomplished). We do not have the prerogative to read into a statute an intent and meaning not expressed, however. *Cedar Rapids Steel Transp., Inc. v. Iowa State Commerce Comm'n,* 160 N.W.2d 825, 830 (Iowa 1968).

One of our cases provides insight in determining the legislative intent underlying the enactment of section 614.1(9). In 1974, we held that Iowa Code section 614.1(2) (1971), the general statute of limitations in tort cases, commences in a medical malpractice case when the injured person knows or can be charged with knowledge of the existence of a cause of action. *Baines v. Blenderman,* 223 N.W.2d 199, 202 (Iowa 1974). One year later, in 1975, the legislature enacted subsection 9, a specific statute of limitations for medical malpractice actions. Subsection 9 was enacted as part of a comprehensive package of legislation aimed at alleviating the medical malpractice insurance crisis. *See* 1975 Iowa Acts ch. 239, § 26. The legislation was prefaced with the statement that "a critical situation exists because of the high cost and impending unavailability of medical malpractice insurance." *Id.* § 1.

Shortly thereafter, we had the opportunity to examine the legislature's purpose in enacting the subsection 9 amendment. We concluded that the legislative history clearly suggested that subsection 9 was enacted in direct response to our decision in *Baines* and that its purpose was to restrict the *Baines* discovery rule. *See Koppers v. Pearson,* 384 N.W.2d 381, 387 (Iowa 1986) (citing *Farnum v. G.D. Searle & Co.,* 339 N.W.2d 392, 395 (Iowa 1983)); *Kohrt v. Yetter,* 344 N.W.2d 245, 247 (Iowa 1984).

Furthermore, the subsection provides its own modified discovery rule by commencing the two-year limitation period from "the date on which [plaintiff] knew, or through the use of reasonable diligence should have known, or received notice ... of, the ... death...." There is no suggestion or hint in this language that the legislature intended that we impose a different commencement date for the limitation period by imposing an additional condition that plaintiff knew the death was wrongful. To further extend the limitation period would be contrary to the plain language of the subsection and the legislature's intent to restrict the length of time for commencing malpractice actions. Additionally, it would create a discovery rule that supersedes a statutorily imposed discovery rule. This is contrary to the legislative intent.

We find support for our conclusion in the positions that other courts have taken when interpretating similar statutes. Our review of the case law reveals that a majority of jurisdictions do not apply the discovery rule when the applicable wrongful death statute of limitations has specific "date of death," "after death," "from death," or similar language. *See Farmers Bank & Trust Co. v. Rice,* 674 S.W.2d 510, 512 (Ky.1984); *DeCosse v. Armstrong Cork Co.,* 319 N.W.2d 45, 48 (Minn.1982); *Krueger v. St. Joseph's Hosp.,* 305 N.W.2d 18, 23–24 (N.D.1981); *Pastierik v. Duquesne Light Co.,* 514 Pa. 517, 524–25, 526 A.2d 323, 326–27 (1987); *Anthony v. Koppers Co.,* 496 Pa. 119, 124, 436 A.2d 181, 184 (1981). In *Krueger,* the court reasoned that the discovery rule is not applicable to a medical malpractice action for wrongful death because the fact of death itself "should indicate a starting point for inquiry regarding a cause of action for wrongful death." *Id.* at 23. It further explained that when the fact of death is known to the plaintiff, "no additional aid in terms of a discovery period is necessary" because the fact that a death has occurred provides the plaintiff with the starting point to determine whether a valid cause of action for wrongful death exists. *Id.* We conclude that this reasoning explains our legislature's intent in enacting subsection 9.

II. *Hardship to plaintiffs.* Finally, plaintiff raises an equitable concern. He argues that the discovery rule should apply to section 614.1(9) because of the "extreme hardship" and "strained and impractical result" it works on survivors. A few courts have allowed equitable concerns and potential hardship to plaintiffs to influence their decision applying the discovery rule in the face of a statute expressly providing that an action must be commenced within a specified period of time after death. *See, e.g., Hanebuth v. Bell Helicopter Int'l,* 694 P.2d 143, 146–47 (Alaska 1984) (applying discovery rule out of concerns of fundamental fairness to plaintiffs in face of statute expressly providing that wrongful death action must be commenced "within two years after the death"); *Praznik v. Sport Aero, Inc.,* 42 Ill.App.3d 330, 334–36, 355 N.E.2d 686, 689–91 (1976) (considering hardship to plaintiffs in applying discovery rule when relevant statute provided that "every [wrongful death] action shall be commenced within 2 years after the death ..."). We find, however, this line of cases to be unsound authority because they are based on judicial discretion used to implement notions of fairness rather than giving effect to the priorities that the legislature has set forth in an express statutory provision.

We find no unjust unfairness in this case because all the information from which the cause of death could be ascertained was available to plaintiff at the time of his wife's death. As the North Dakota court in *Krueger* reasoned, in the absence of fraud the two-year statutory period provided sufficient time to examine medical records and ascertain facts regarding the cause of death to determine if defendants committed any acts of malpractice. *Krueger,* 305 N.W.2d at 22–23. In this case, plaintiff was put on inquiry notice on June 13, 1987, to determine whether the death was caused by a wrongful act(s) of the defendants. For these reasons, we conclude that plaintiff's "extreme hardship-impractical result" arguments have no merit.

III. *Conclusion.* In this case, we hold that the statute of limitations began to run on June 13, 1987, the date of plaintiff's wife's death. Since plaintiff did not file this wrongful death action against defendants until June 30, 1989, the two-year period expired on June 13, 1989. Thus, plaintiff's malpractice action against defendants is barred.

The trial court's ruling on defendants' summary judgment motion is reversed and plaintiff's malpractice action against defendants is dismissed.

REVERSED AND REMANDED.