# IN THE COURT OF APPEALS OF IOWA

No. 24-0914
Filed October 16, 2024

**IN THE INTEREST OF T.R., N.R., K.R., and I.R.,**
**Minor Children,**

**T.R., Mother,**
    Appellant,

**N.R., Minor Child,**
    Appellant.

_____

Appeal from the Iowa District Court for Polk County, Rachael E. Seymour, Judge.

A mother appeals the termination of her parental rights to four of her children. The mother's daughter also appeals termination of parental rights as to her. **AFFIRMED ON BOTH APPEALS.**

Clara Avenarius of Branstad & Olson Law Office, Des Moines, for appellant mother.

Audra F. Saunders, West Des Moines, attorney for appellant minor child N.R.

Brenna Bird, Attorney General, Mackenzie Moran, Assistant Attorney General, for appellee State.

Nicole Garbis Nolan, Des Moines, attorney for T.R., K.R., and I.R. and guardian ad litem for all minor children.

Considered by Tabor, C.J., and Ahlers and Sandy, JJ.

**SANDY, Judge.**

A mother's parental rights to four of her children were terminated pursuant to Iowa Code section 232.116(1)(d), (f), and (h) (2023).  The mother appeals the termination.  The mother contends that: (1) the juvenile court lacked subject matter jurisdiction; (2) the State did not meet its burden to support termination; (3) the juvenile court erred by not granting a six-month extension for reunification; (4) the guardian ad litem (GAL) for all of the children and attorney for three failed to meet her statutory duties; (5) several procedural errors that occurred during the termination proceedings amounted to structural error; and (6) her and the children's substantive due process and equal protection rights under the state and federal constitutions were violated.

Additionally, the mother's daughter—N.R.—appeals the juvenile court's termination order, arguing (1) termination of the mother's rights was not in her best interest and (2) a statutory exception to termination should have been applied by the juvenile court.

After our independent review of the record, we affirm the juvenile court's termination order.

**I. Background and Proceedings**

This case has followed a long and tortured path to get to us.  The children who are the subjects of this appeal include N.R., born in 2010; K.R., born in 2014; I.R., born in 2016; and T.R., who was born 2022.  M.D. is the father of N.R., K.R., and I.R.  T.M. is the father of T.R.

The mother has an extensive history of bouts with mental-health struggles. Throughout her life she has been diagnosed by several mental-health

professionals with post-traumatic stress disorder (PTSD), attention-deficit/hyperactivity disorder (ADHD), bipolar disorder, borderline personality disorder, and dissociative personality disorder. The mother's mental health has significantly interfered with her ability to properly care for her children. The record discloses the mother has a habit of repeatedly dropping off the children with others—sometimes lasting months at time—when she experienced mental-health episodes and felt overwhelmed.

M.D. and the mother were in a relationship until 2017. After their relationship ended, the mother told M.D. that he "could forget about" seeing their children. The mother took physical care of the children after the relationship ended. Even so, after the mother suffered a mental-health episode in July 2019, she dropped N.R., K.R., and I.R. off with M.D. and did not return. Eventually, the mother asked that the children be returned to her care. But M.D. refused because of concerns relevant to the mother's mental health and stability. N.R., K.R., and I.R. remained in M.D.'s physical care for nearly a year.

In October 2020, the mother filed a petition for custody of the children. A temporary order was entered by the district court granting both parents joint legal custody. M.D. was granted physical care of the children, and the mother was granted visitation. Still, following entry of the temporary order, the mother's attorney requested authorization to file a child in need of assistance (CINA) petition. The petition was authorized.[1] N.R., K.R., and I.R. were later adjudicated

---

[1] The juvenile court made clear in its ruling and from the record that when it authorized the filing of a CINA petition it was unaware that a district court order on temporary matters had recently been filed. We also note the CINA petition for M.D.'s children with the mother was filed pursuant to Iowa Code section 232.87(3)

CINA. The juvenile court noted the children reported M.D. abused alcohol while watching them, used excessive force in disciplining them, and threatened them with physical violence. The children were placed back in the custody of the mother under the supervision of the Iowa Department of Health and Human Services (DHHS).

Amid the mother's strife with M.D. over the custody of their children, the mother began a relationship with T.M. In early 2021, the mother and T.M. conceived a son—T.R. For the first seven months of T.R.'s life, he was under the exclusive care of the mother. The mother denied T.M. visitation with T.R.

N.R., K.R., and I.R. remained in the custody of the mother until a permanency hearing in September 2022. During the hearing the mother became extremely agitated. At one point she sent her attorney a message requesting that the children be removed from her custody. She also asked her attorney to request that her parental rights be terminated. The mother suggested to the juvenile court that she was too mentally unstable to care for the children. Following this episode the juvenile court placed the children in the custody of DHHS for purposes of relative placement.

Shortly after the permanency hearing for M.D.'s children with mother, a CINA petition was filed on behalf of T.R. The State then filed for temporary removal from the mother's custody. The juvenile court granted this request, and T.R. was placed in the custody of the mother's adult daughter—L.L. T.R. was adjudicated

---

(2021), which provides "[t]he department, juvenile court officer, county attorney or judge may authorize the filing of a petition with the clerk of the court by any competent person having knowledge of the circumstances without the payment of a filing fee."

a CINA in February 2023 and placed in the custody of his father T.M. subject to supervision by DHHS.

In September 2023, a contested permanency review and permanency hearing was held for N.R., K.R., I.R., and T.R. The juvenile court heard testimony from Andye Jones—the mother's therapist for the past six years. Jones saw the mother for therapy weekly. Despite the extensive work Jones has done with the mother, Jones stated the mother's condition "vacillates." According to Jones, the mother has "made progress, and then there's times where she struggles again depending on what's going on." Jones has personally diagnosed the mother with generalized anxiety disorder, PTSD, and borderline personality disorder. Jones explained during her testimony that the mother's mental health is so unstable that she cannot participate in EDMR therapy (a treatment modality for PTSD).

Following the permanency/review hearing, the juvenile court granted M.D. custody of his children. The juvenile court also granted T.M. custody of T.R. M.D. and T.M. then filed petitions to terminate the mother's parental rights in early December 2023. The State filed notice to join the termination petitions on January 2, 2024. K.R., I.R., T.R., and N.R.'s GAL and K.R., I.R., and T.R's attorney—Nicole Garbis Nolan—filed notice to join T.M.'s termination petition on the same day, and subsequently orally moved to join M.D.'s petition on the first day of the termination hearing. Garbis Nolan filed her GAL report on January 2, 2024.

The combined termination hearing occurred on January 3, 2024 (one day after the State joined the petitions). The transcript reveals that the mother was served with the TPR petitions on December 11 and 18 of 2023. Even so, counsel for the mother acknowledged that all were aware of the pending termination trial

before those dates of service. Of note, the mother's counsel at the termination hearing entered an appearance as the mother's counsel on October 9, 2023, in the underlying CINA case. The mother's counsel made several motions in the CINA case, including a motion to enlarge and reconsider.

Both fathers testified at the termination hearing and expressed concerns over their ability to coparent with the mother and the state of her mental health. T.M. asserted his belief that a coparenting relationship with the mother is impossible. He recounted one incident in which the mother, despite clear instructions not to do so, showed up at his home. She then hit him with her car during a drop-off exchange. To be clear, she tried to run T.M. over with her car. Moreover, T.M. noted that the mother was often divisive in her communications and would start arguments over minor things relating to the care of T.R. T.M. believed the mother would never be able to accept any arrangement in which she was not the primary caretaker of T.R. He asserted the mother's behavior has consistently caused disruptions in his care for T.R. He also stated that he has never seen the mother successfully manage her mental health for sustained periods of time.

M.D. shared similar concerns. He testified a successful coparenting relationship with the mother is impossible. He does not feel safe interacting with the mother. He believes termination of the mother's parental rights is necessary to prevent her from harmfully interfering with the children's lives. For example, he recounted an incident in which the mother negatively interfered with a medical appointment for the children. The mother told M.D. the children had been scheduled for a dentist appointment. M.D. took the children to the dentist's office

but was informed by a receptionist that no appointment had been scheduled for the children. The mother then sent M.D. a series of text messages asking why he and the children were not at an eyecare appointment. M.D. then drove the children to the eye doctor's office, where the mother then caused a scene by erupting in public at the eyecare center screaming. M.D. removed himself from the scene and later apologized profusely to the staff and rescheduled the appointments.

M.D. also shared concerns over the mother's mental health. M.D. testified the mother's mental health often cycles. M.D. stated, however, that "in the past few years, I haven't seen a cycle, I've seen a constant steady decline." He added that the mother's mental health would often cause her to live her life as though "she didn't have children."

During her testimony at the hearing, the mother admitted her mental health often "cycles." She also admitted to often dropping off the children in the care of others when she was feeling "overwhelmed" with her mental health. The mother stated she would prefer to coparent the children with their fathers. But the mother also testified she did not want to share custody of N.R., K.R., and I.R. with M.D. She stated she and M.D.'s "communication[s] cannot be amicable." As for T.M., she also stated she did not want to share custody of T.R. with him. She suggested she does not trust T.M. to properly care for T.R.

Finally, we find it worthy to mention the juvenile court observed the mother's erratic behavior during her testimony. The juvenile court noted that it was hard to track the mother because her testimony would be objectively false or self-contradictory. For example, the juvenile court wrote the "mother continued to be manipulative and uncooperative when questioned by any attorney other than her

own." The juvenile court also found the mother gave deliberately false testimony, such as claiming "she has always been amicable to both fathers."

The juvenile court subsequently entered its termination order on April 30, 2024. The juvenile court terminated the mother's parental rights to N.R., K.R., and I.R. pursuant to Iowa Code section 232.116(1)(d) and (f). The juvenile court terminated the mother's parental rights to T.R. pursuant to Iowa Code section 232.11(1)(d) and (h).

The mother appeals. N.R. appeals the termination of the mother's parental rights as to her.

## II. Standard of Review

"We review proceedings terminating parental rights de novo." *In re A.S.*, 906 N.W.2d 467, 472 (Iowa 2018) (citation omitted). We are not bound by the juvenile court's findings of fact, but we do give them weight, especially when they involve witness credibility determinations. *In re A.M.*, 843 N.W.2d 100, 110 (Iowa 2014).

To the extent that a party raises a constitutional claim, our review on appeal is also de novo. *State v. Boggs*, 741 N.W.2d 492, 498–99 (Iowa 2007).

## III. Analysis

### A. The Mother's Motion for Full Briefing

We begin our analysis with a housekeeping matter. The mother has made a motion for full briefing pursuant to Iowa Rule of Appellate Procedure 6.205(1). The State resisted. Given the nature of the current briefing now before us, we do not find further briefing necessary nor believe such would be beneficial.

**B. Subject Matter Jurisdiction**

Moving forward to the merits of the mother's claims on appeal, she first argues the juvenile court lacked subject matter jurisdiction to hear the termination petitions because both were filed by the fathers of the children. She notes Iowa Code section 232.111(1) provides that only a child's "guardian, guardian ad litem, or custodian, the department, a juvenile court officer, or the country attorney" may file a petition for termination of parental rights. The mother contends because a parent is not among those listed with authorization to file a termination petition by section 232.111(1), the juvenile court lacked subject matter jurisdiction. This is incorrect.

Our supreme court has said that a juvenile court has subject matter jurisdiction to adjudicate a termination petition filed by a parent, provided the State or a GAL joined the petition. *See In re H.S.*, 805 N.W.2d 737, 739 n.2 (Iowa 2011) (allowing a termination petition filed by a parent to proceed because the State and the GAL joined the petition). And our own case law suggests that juvenile courts have subject matter jurisdiction to hear termination petitions filed by a parent of the child if the State or a GAL joins the petition. *See In re R.G.*, No. 21-0337, 2022 WL 468720, at *5 (Iowa Ct. App. Feb. 16, 2022) (finding that the juvenile court lacked jurisdiction to decide a chapter 232 termination petition filed by a parent that was not joined by the State or GAL). Because the fathers' petitions were joined by the State and the GAL, we find the juvenile court had subject matter jurisdiction to adjudicate this dispute.

**C. Grounds for Termination**

Under Iowa Code chapter 232, a parent's parental rights may be terminated if (1) grounds for termination under section 232.116(1) have been established by clear and convincing evidence; (2) the best-interest framework—as provided for by section 232.116(2)—supports termination of parental rights; and (3) none of the exceptions under 232.116(3) apply to prevent termination of parental rights. *A.S.*, 906 N.W.2d at 472–73.

*1. Iowa Code section 232.116(1)(d)[2]*

Iowa Code section 232.116(1)(d) authorizes termination of parental rights when each of the following have occurred:

> (1) The court has previously adjudicated the child to be a [CINA] after finding the child to have been physically or sexually abused or neglected as the result of the acts or omissions of one or both parents, or the court has previously adjudicated a child who is a member of the same family to be a [CINA] after such a finding. This paragraph shall not be construed to require that a finding of sexual abuse or neglect requires a finding of a nonaccidental physical injury.
> (2) Subsequent to the [CINA] adjudication, the parents were offered or received services to correct the circumstance which led to the adjudication, and the circumstance continues to exist despite the offer or receipt of services.

The mother only contests the second element—that prior circumstances remain. We disagree. As the juvenile court noted in its thorough ruling, the evidence supports the conclusion that the mother has numerous unresolved mental-health issues that should preclude the children from being returned to her care. The

---

[2] We note the mother's parental rights were terminated for each child pursuant to section 232.116(1)(d). We need only find grounds for termination under one of the sections analyzed by the juvenile court to affirm its ruling. *See In re R.K.*, 649 N.W.2d 18, 19 (Iowa Ct. App. 2002). Therefore, we decline to analyze the other grounds for termination found by the juvenile court.

mother's own therapist testified that her condition is not stable. The mother herself admitted her mental health often "cycles." And during the CINA case involving these children, the mother suggested her mental health was not stable and requested that the juvenile court remove the children from her custody and terminate her parental rights. This history gives us little confidence that the mother is able to properly care for the children at this time. *See In re J.E.*, 723 N.W.2d 793, 798 (Iowa 2006) (noting courts should consider a parent's past performance because it may indicate the quality of care the parent can provide in the future).

### 2. Best Interests[3]

In considering the best interests of the child, we are to give "primary consideration to the child's safety, to the best placement for furthering the long-term nurturing and growth of the child, and to the physical, mental, and emotional condition and needs of the child." Iowa Code § 232.116(2). We may also consider whether the parent's ability to care for the child is affected by parent's mental capacity or condition. *In re B.T.*, No. 23-0988, 2023 WL 5605625, at *1 (Iowa Ct. App. Aug. 30, 2023); *accord* Iowa Code § 232.116(2)(a). Additionally, if the child can express a reasonable preference, we will consider their preference as well. Iowa Code § 232.116(2)(b)(2).

The mother contends termination is not in the children's best interest. She notes the close bond between herself and the children should preclude a finding that termination is in their best interests. Further, she notes that three of the children—N.R., K.R., and I.R.—have expressed a desire to maintain the parent-

---

[3] Because the best-interest analysis is identical for each child, we analyze each child's best interests together including the basis of N.R.'s appeal.

child relationship.[4]  The mother also contends the children all have a close sibling bond that counsels against terminating her parental rights.  She argues termination would diminish or end the sibling relationships between the children.

We find termination of the mother's parental rights is in the best interests of each of the children.  We begin our analysis by noting that most of the mother's arguments on this issue are more properly characterized as reasons for applying exceptions to termination, which we address next.  As we have previously stated, "the child's safety and the need for permanent home" are the quintessential elements of a best-interest analysis.  *In re A.M.*, No. 20-0480, 2020 WL 4814170, at *4 (Iowa Ct. App. Aug. 19, 2020).  The mother's unresolved mental-health issues and previous actions have deprived the children of a permanent home and directly led to them being placed in several homes with numerous people.  This is not healthy for the children, as stability is crucial for a child's long-term best interests.  *See In re J.H.*, No. 23-0756, 2023 WL 4752038, at *3 (Iowa Ct. App. July 26, 2023) (finding termination is in the children's best interest because it would permit them to find a home that could provide stability).  Leaving the children in the care of their fathers provides the children with the best opportunity of achieving permanency and stability.

Additionally, while we are mindful that N.R. objected to the termination, a child's wishes are not controlling.  *See In re A.R.*, 932 N.W.2d 588, 592 (Iowa Ct. App. 2019) (noting that child's preference on termination is not controlling).  We respect N.R.'s stance, but the children's long-term best interests must always

---

[4] We note the record is conflicting over whether K.R. and I.R. opposed termination of their mother's parental rights.

remain our primary concern. *See In re A.S.*, No. 16-1984, 2017 WL 710562, at *3 (Iowa Ct. App. Feb. 22, 2017) ("Our overriding concern must be the long-term best interests of the children . . . .").

Lastly, the mother is correct that sibling bonds are a factor for us to consider when analyzing the best interests of a child. *See In re L.W.*, No. 23-0326, 2023 WL 3861986, at *4 (Iowa Ct. App. June 7, 2023) (stating that sibling relationships is a relevant consideration in a best-interest analysis). That said, this consideration is only one factor among many that we consider. *See id.* Both fathers expressed a desire to maintain the sibling bond between the children. We find termination is in the children's best interests.

*3. Exceptions to Termination*

Moving on to the third step in our termination analysis, we consider whether an exception to termination applies. Both the mother and N.R. assert arguments as to why an exception to termination under section 232.116(3) should have been applied. The mother contends the close bond between herself and the children supports her argument that termination is not in the best interests of the children. N.R. also argues that the closeness of her relationship with her mother should have led to an exception to termination being applied. In passing, the mother also contends an exception to termination should have been applied by the juvenile court because the children are in the custody of their respective fathers. *See* Iowa Code § 232.116(3)(a) (stating a court need not terminate parental rights if a "relative has legal custody" of the child).

Section 232.116(3)(c) provides that a court need not terminate the relationship between a parent and child if the court finds "[t]here is clear and

convincing evidence that the termination would be detrimental to the child at the time due to the closeness of the parent-child relationship." Even so, the exceptions under section 232.116(3) are permissive, not mandatory. *See In re C.C.*, No. 23-0976, 2023 WL 5949192, at *4 (Iowa Ct. App. Sept. 13, 2023) (noting the exceptions to termination under section 232.116(3) are permissive rather than mandatory).

We note the juvenile court never considered the exception under section 232.116(3)(c) in its ruling. The mother did argue for the application of section 232.116(3)(c) in her closing brief to the juvenile court. But the juvenile court never ruled on the applicability of the exception, and the mother did not raise the exception in her motion to enlarge and reconsider. Thus, error on this issue was not preserved. *See Meier v. Senecaut*, 641 N.W.2d 532, 539 (Iowa 2002). Even assuming N.R. and the mother properly preserved this issue, the existence of a close bond is not alone sufficient to justify applying the exception. *See In re R.P.*, No. 23-0419, 2023 WL 3612412, at *2 (Iowa Ct. App. May 24, 2023) ("But even if we were to assume such a bond exists, the existence of a bond is not enough."). The parties raising section 232.116(3)(c) must prove that termination would be detrimental to the child due to the bond for the exception to be warranted. That proof is not present here.

As to the mother's section 232.116(3)(a) argument, we note "[a]n appropriate determination to terminate the parent-child relationship is not to be countermanded by the ability and willingness of the [other parent] to take the child." *In re C.K.*, 558 N.W.2d 170, 174 (Iowa 1997) (alteration in original). The fathers have custody of the children and have been providing the appropriate care for the

children. And we agree with the juvenile court that the termination of the mother's parental rights is necessary, even though the children are in their father's care. The record is filled with evidence of the mother disturbing the stability of the children by interfering unnecessarily with each father's care of the children.

### D. Six-Month Extension

Next, the mother argues she should have been granted a six-month extension to permit additional time for reunification. She contends a six-month extension would have been appropriate because she has made significant strides in addressing her mental health. We conclude the mother has not preserved the six-month-extension argument for our review.

The mother raised the issue of a possible extension for reunification in her closing brief submitted to the juvenile court. But the juvenile court never made a ruling on the issue. We also note the mother's motion to enlarge and reconsider did not raise the issue of an extension. A party "must still request a ruling from the district court to preserve error for appeal on an issue presented but not decided." *Meier*, 641 N.W.2d at 539. And although the State does not contest error preservation on this issue, we have independent authority to consider whether error was preserved. *See Top of Iowa Coop v. Sime Farms, Inc.*, 608 N.W.2d 454, 470 (Iowa 2000).

### E. GAL's Conformance with Statutory Duties

The mother's next claim of error is that Garbis Nolan—the GAL for all of the children and the attorney for K.R., I.R., and T.R.—failed to meet the statutory duties imposed by the Iowa Code. *See* Iowa Code § 232.2(25) (listing the duties of a GAL). Specifically, the mother contends the Garbis Nolan's report lacked

sufficient explanation for how she reached her conclusions. The mother also asserts that Garbis Nolan did not interview the children's treating mental-health professionals and educational providers as required by law. *See* Iowa Code § 232.25(b)(4) (providing GAL shall "interview[] any person providing medical mental health, social, educational, or other services to the child before any hearing"). Lastly, the mother contends the juvenile court should have bifurcated Garbis Nolan's roles as GAL and attorney for K.R. and I.R. because their views on termination differed. She argues these errors amounted to reversible error. We take each argument in turn.

 *1. Statutory Compliance*

Iowa Code section 232.25(b)(8) provides that "unless otherwise enlarged or circumscribed after a finding of good cause" by the juvenile court, the guardian ad litem shall submit "a written report to the juvenile court and to each of the parties detailing compliance with this subsection." This section does not provide the specificity or level of detail a GAL's report should include. But we agree with the mother that Garbis Nolan's report here was sparse with details or reasoning for her conclusions. And we have previously held that a GAL's skeleton report was not sufficient to comply with the demands of section 232.25(b) and could serve as a basis for error *when the juvenile court relied on the GAL's position* that termination was in the child's best interest. *See In re A.D.*, No. 24–0232, 2024 WL 2045988, at *7 (Iowa Ct. App. May 8, 2024) ("Because the GAL did not meet the statutory requirements, we agree with [father] that the juvenile court was remiss in relying on the GAL's position that termination is in [the child's] best interest.").

But we believe this case is distinguishable because the juvenile court never relied on Garbis Nolan's recommendation in its analysis. *See In re Z.H.*, No. 24-1225, 2024 WL 4370058, at *3 (Iowa Ct. App. Oct. 2, 2024). Instead, the juvenile court focused on the mother's unresolved mental-health issues to determine that the statutory grounds were satisfied and that termination was in the best interest of the children. And such conclusions were supported by the overwhelming evidence in the record. Accordingly, we do not find the mother's rights were prejudiced. *See* Iowa Code § 619.16 (stating errors which do not affect the substantial rights of a party should not be a basis for reversal).

For similar reasons, we find the mother's arguments as to Garbis Nolan's alleged failures to speak with K.R.'s and I.R.'s mental-health professionals and educational providers pursuant to section 232.25(b)(4) are misplaced. While we acknowledge Garbis Nolan's conduct and report likely did not comport with the requirements under section 232.25(b), we cannot discern reversible error. The mental-health providers provided live, in-person testimony. In this unique case, much of the collateral third-party information usually included in a report to the juvenile court was provided by sworn witness testimony—the juvenile court did not need a GAL report as it had a front row seat to the providers' information. Any error is therefore mitigated accordingly.

*2. Bifurcation of GAL and Attorney Roles*

In *In re A.T.*, we held the juvenile court erred by not ordering bifurcation of the roles of a child's GAL and attorney because the child's views on termination and GAL/attorney's were clearly contradictory. 744 N.W.2d 657, 665 (Iowa Ct. App. 2007). Key to our reasoning was the fact that the child at issue was a

teenager who was of sufficient age and maturity to meaningfully express her wishes to the juvenile court. *See id.* at 663 ("It would appear that the older, more intelligent, and mature the child is, the more impact the child's wishes should have, and a child of sufficient maturity should be entitled to have the attorney advocate for the result the child desires.").

But that is not the case we face here. K.R. was ten years old at the time of the termination, while I.R. was seven years old. Garbis Nolan, in her report, stated K.R. and I.R. were not of sufficient age or maturity to have an informed position on termination. *Cf.* Iowa Code § 232.116(3)(b) (providing as an exception to termination when a "child *is over ten years of age* and objects to the termination" (emphasis added)). And Shannon Sandahl—K.R.'s and I.R.'s therapist—agreed with such assessment. Sandahl testified she never asked K.R. and I.R. "where would you like to be" because she believed they were not sufficiently mature to make such a determination. And we note section 232.116 provides that the wishes of the children should be considered only if they are of sufficient maturity to express their wishes. *See* Iowa Code § 232.116(2)(b) (noting in considering termination, a court may consider "[t]he reasonable preference of the child, *if* the court determines that the child has sufficient capacity to express a reasonable preference" (emphasis added)). Therefore, we conclude the juvenile court did not err by denying the motion for bifurcation.[5]

---

[5] For similar reasons, we cannot find Garbis Nolan acted inappropriately by refusing to reschedule K.R. and I.R.'s meeting with the juvenile court. Initially, Garbis Nolan filed a motion requesting the juvenile court meet with K.R. and I.R. to discuss their wishes. This motion was granted and hearing was scheduled for the juvenile court to meet with the children. The record discloses the meeting did

**F. Structural Error**

The mother next claims the proceedings were infected with two defects that amounted to structural error. She first contends her counsel was not given adequate time to prepare for the termination hearing. She notes her attorney was appointed on the first day of the hearing and subsequently moved to withdraw because of lack of preparation. Second, she notes she was never served with joinder notice. She argues the lack of joinder notice allowed a surprise attack that eliminated the possibility of a fair hearing. She claims these two errors combine to amount to structural error. We disagree.

We address the mother's argument related to her counsel first. Iowa Code section 232.113(1) provides "[u]pon the filing of a petition the parent identified in the petition shall have the right to counsel in connection with all subsequent hearings and proceedings." "We have recognized that due process requires that the statutory right to counsel comes with it the right to effective counsel." *In re W.T.*, 967 N.W.2d 315, 319 (Iowa 2021).

Applying these principles, we cannot conclude a structural error occurred based on unpreparedness by the mother's counsel. While the mother claims her counsel was unprepared for the termination proceedings, the record belies that claim. Counsel for the mother zealously advocated on her behalf during the proceedings. Counsel filed a litany of motions, called many witnesses, and offered various exhibits on the mother's behalf. Moreover, counsel for the mother made an appearance in the underlying CINA case and filed numerous motions with the

---

not occur because the mother and her attorney showed up to the juvenile court shortly before the meeting was set to begin with food and drinks for the children.

juvenile court. This all occurred nearly four months before the termination hearing began. Structural errors are errors that "infect the entire trial process" and "undermine the ultimate 'determination.'" *State v. Brimmer*, 983 N.W.2d 247, 270 (Iowa 2022) (citations omitted). No such error occurred here because of the mother's counsel's alleged unpreparedness.

Next, we address the mother's claim that a structural error occurred because she was never served notice of the State's and GAL's joinders. We begin by recognizing notice of termination proceedings "by personal delivery and notice sent by electronic mail or other electronic means" shall be "served not less than seven days prior to the hearing on termination of parental rights." Iowa Code § 232.112(3). This statute only refers to notice of the termination hearing itself, not notice of joinder by a party such as the State or a GAL. *See Schultze v. Landmark Hotel Corp.*, 463 N.W.2d 47, 49 (Iowa 1990) ("Ordinarily, we may not, under the guise of judicial construction, add modifying words to the statute or change its terms."). And we note the mother has cited no authority for the proposition that she was entitled to joinder notice.

Even assuming the mother was entitled to notice of joinder, we cannot conclude that a structural error occurred because the motion to dismiss filed by the mother was only ruled on after the joinder.

### G. Constitutional Claims

Finally, the mother makes a host of constitutional claims. First, she asserts the State violated section 232.114(2) by failing to present case-in-chief evidence to support termination. She claims this violated her due process rights. The mother also makes broad constitutional arguments that her and the children's

substantive due process and equal protection rights were violated.  We reject each argument.

We begin first with the mother's section 232.114(2) argument.  "Upon the filing of a petition the county attorney shall represent the state in all adversary proceedings arising under this subchapter and shall present evidence in support of the petition."  Iowa Code § 232.114(2).  This is exactly what the State did here.  The State filed a witness list, elicited testimony from those witnesses, and submitted thirteen exhibits that were admitted into evidence.  We fail to see how the State did not comply with this statute.  Consequently, we fail to see how the mother's due process rights were violated on this ground.

As for the mother's substantive due process and equal protection claims, we find they are waived on appeal as they are sweeping arguments with no citation to legal authorities.  *See* Iowa R. App. P. 6.903(2)(a)(8)(3) (2024) ("Failure to cite authority in support of an issue may be deemed waiver of that issue."); *see also In re C.B.*, 611 N.W.2d 489, 492 (Iowa 2000) ("A broad, all-encompassing argument is insufficient to identity error in cases of de novo review).  Thus, we decline to address the mother's constitutional arguments.

Finally, for the first time in her motion for full briefing, the mother raises a new argument that Iowa Rule of Appellate Procedure 6.201(1)(c) violates her constitutional rights.  This rule provides that a petition on appeal of a termination order entered under Iowa Code chapter 232 "may not exceed 20 pages."  The mother argues that the application of rule 6.201(1)(c) violates her procedural due process, substantive due process, and equal protection rights under the state and federal constitutions.  She contends the twenty-page limit imposed by rule

6.201(1)(c) denied her a "meaningful opportunity to identify sufficient facts and law to preserve both her statutory and constitutional arguments on appeal." We find the mother failed to preserve these arguments on appeal.

Constitutional questions must be preserved "at the earliest opportunity after the grounds for the objection become apparent." *State v. Yaw*, 398 N.W.2d 803, 804 (Iowa 1987). As soon as the mother filed her notice of appeal, the procedures she challenges were applicable to her. Because the mother did not include such challenges to the rules of appellate procedure in her original petition, we find these arguments have not been properly preserved for appeal. *See In re C.M.*, 652 N.W.2d 204, 207 (Iowa 2002) ("Having failed to include her constitutional claims in her petition, those issues are not preserved for review.").

## IV.     Conclusion

In sum, we affirm the juvenile court's ruling because we find (1) the juvenile court had subject matter jurisdiction; (2) clear and convincing evidence supported termination under Iowa Code section 232.116(1)(d) and the termination is in the children's best interest; (3) the mother did not preserve her claim that the juvenile court erred in declining to grant her a six-month extension for unification; (4) the GAL's failure to comply with statutory duties did not amount to reversible error; (5) no structural error occurred; and (6) the mother's constitutional arguments were waived on appeal.

**AFFIRMED ON BOTH APPEALS.**