# In the Iowa Supreme Court

No. 24–1994

Submitted January 20, 2026—Filed February 27, 2026

**Estate of Jill Cataldo** by **Zachary Mead,** individually and as special administrator,

Appellant,

vs.

**RCHP-Ottumwa, LLC, Matthew Jay Breeding,** and **Elvin McCarl,**

Appellees.

Appeal from the Iowa District Court for Polk County, Lawrence P. McLellan, judge.

An estate appeals the district court's dismissal of a wrongful-death action as barred by the two-year statute of limitations. **Affirmed.**

McDermott, J., delivered the opinion of the court, in which all justices joined.

Erin E. Jordan and Katie M. Naset of Hope Law Firm & Associates, P.C., West Des Moines, for appellant.

Tricia L. Hoffman-Simanek, Ross T. Andrews, and Eric P. Martin of Shuttleworth & Ingersoll, Cedar Rapids, for appellees RCHP-Ottumwa, LLC, and Matthew Jay Breeding.

Michael J. Denning, Christopher J. Drinkwine, and Andrew T. Bell of Heyl, Royster, Voelker & Allen, P.C., Rockford, IL, for appellee Elvin McCarl.

**McDermott, Justice.**

This appeal requires us to determine the starting point of the statute of limitations for a wrongful-death action arising from medical malpractice. On January 25, 2021, Jill Cataldo went to Ottumwa Regional Health Center for a knee replacement. She remained there after the operation for recovery. But she soon began battling a respiratory illness, and on February 2, she was diagnosed with acute hypoxic respiratory failure. That same day, her doctor, Eugene McCarl, took an X-ray to investigate her separate report about knee pain. In reviewing the X-ray, Dr. McCarl allegedly failed to detect a fracture of her femur. Cataldo suffered this fracture, it is alleged, in a fall while in Ottumwa Regional's care sometime after her knee surgery.

Cataldo suffered another fall early the next morning. As Cataldo later described the incident to her mother, a male nurse fell on her while moving her to the bathroom. An X-ray taken after this fall showed a severe femur fracture. Because the earlier femur fracture had gone undetected, it had not been stabilized before her bathroom fall, resulting in a far more serious break. The fracture released emboli (pieces of fatty deposit) into her bloodstream that soon blocked blood flow to an artery in her lung, creating a pulmonary embolism. On February 5, Cataldo was transferred to Iowa Lutheran Hospital in Des Moines. Her diagnosis at that time was "acute respiratory failure with hypoxia due to pulmonary embolism and fall."

Her respiratory problems continued to worsen in the days that followed. She died on February 17.

Exactly two years later, on February 17, 2023, Cataldo's estate filed a wrongful-death action based on medical malpractice. The estate alleged that Dr. McCarl's negligent failure to detect the fractured femur on February 2 left

Cataldo with an unstable fracture and, combined with the negligence of the nurse who fell on her, caused the severe femur fracture on February 3. These actions allegedly fell below the standard of care, ultimately leading to the release of fat emboli and the pulmonary embolism that caused her death. The petition sought damages for wrongful death, including Cataldo's pre-death pain and suffering.

The defendants—Dr. McCarl, nurse Matthew Breeding, and an Ottumwa Regional entity known as RCHP-Ottumwa, LLC—moved for summary judgment, arguing that the claims were time-barred under Iowa Code § 614.1(9)(*a*) (2023). They asserted that the statutory two-year limitations period began at the latest on February 5, 2021, by which point the family had learned of the injury and its cause. The estate resisted, arguing that the limitations period on a wrongful-death claim does not begin to run until the date of death and thus the petition filed February 17, 2023, was timely. The district court granted summary judgment in the defendants' favor and dismissed the case. The estate filed this appeal.

A statute of limitations is a law that sets a time limit for filing a lawsuit. *Albrecht v. Gen. Motors Corp.*, 648 N.W.2d 87, 93 (Iowa 2002). Iowa Code § 614.1(9)(*a*) regulates the limitations period for medical malpractice actions. It states in relevant part:

> [Causes of action] founded on injuries to the person or wrongful death against any physician and surgeon, . . . nurse, . . . or a hospital licensed under chapter 135B, arising out of patient care, [must be brought] within two years after the date on which the claimant knew, or through the use of reasonable diligence should have known, or received notice in writing of the existence of, the injury or death for which damages are sought in the action, whichever of the dates occurs first, but in no event . . . more than six years after the date on which occurred the act or omission or occurrence alleged . . . to have been the cause of the injury or death . . . .

Iowa Code § 614.1(9)(*a*).

The estate argues that the district court misinterpreted the statute by reading "whichever of the dates occurs first" to refer to "injury or death" and not to "the date" that the party knew, should have known, or received written notice of the injury or death. The estate's reading here is correct: the "whichever of these dates occurs first" refers to one of the three potential dates for assigning actual or constructive knowledge of the injury or death. But not much turns on this point. It's undisputed in this case that, as the district court found, the estate knew the date of Cataldo's injury and its cause by February 5, 2021, when Cataldo was transferred to Iowa Lutheran Hospital.

The estate's primary argument is that a wrongful-death claim does not exist until the victim dies and, as a result, the clock does not start until the date of death. This is true, the estate argues, even if the limitations period had already begun (or even expired) on a claim for injuries that precipitated the death. Framed in this way, the wrongful-death claim does not belong to the decedent, but to the decedent's estate. Applying this argument here, although Cataldo had possessed a personal claim for her injuries, her wrongful-death claim did not arise until the moment she died, and when it arose, it vested in her estate.

Cataldo argues that *Schultze v. Landmark Hotel Corp.*, 463 N.W.2d 47, 49 (Iowa 1990), firmly establishes that the statute of limitations in a wrongful-death case starts on the date of death. In *Schultze*, the decedent was admitted to the hospital on May 27, 1987, to treat a hip fracture after a fall. *Id.* at 48. She died on June 13. *Id.* About three months later, on September 8, the lawyer for her estate received the hospital's medical records and uncovered evidence of medical malpractice. *Id.* On June 30, 1989, the estate sued the hospital and treating physicians for wrongful death. *Id.* On appeal, we reversed the district court's

denial of summary judgment, holding that "malpractice actions for wrongful death must be brought within two years after the claimant knew of the death." *Id.* at 49. We reasoned that the death itself serves as the "starting point" for a plaintiff to investigate and determine if a valid cause of action exists. *Id.* at 50.

*Schultze* offers the inverse factual scenario to the one here. The plaintiffs in *Schultze* claimed to have no knowledge of malpractice until three months after the death and argued that the limitations clock should not have started until its discovery. *Id.* at 48–49. *Schultze* stands for the proposition that even where plaintiffs lack actual or imputed knowledge of malpractice when the victim dies, the statute of limitations nonetheless begins to run "on the date the death is discovered." *Id.* at 48. In *Rathje v. Mercy Hospital*, which wasn't a wrongful-death case, we held that the statute of limitations for a medical malpractice claim under § 614.1(9) is triggered upon "knowledge of *both* the injury and its cause in fact." 745 N.W.2d 443, 461 (Iowa 2008) (emphasis added). Later, in *Estate of Gray v. Baldi*, we briefly raised the question whether the discovery rule in *Rathje* applied to wrongful-death cases but ultimately concluded that we "need not decide" the question under the facts presented. 880 N.W.2d 451, 459 (Iowa 2016). In any event, *Schultze* exerts no force here, as this case presents no late discovery issue. The claimants here discovered the negligence two weeks *before* Cataldo's death.

The estate also points us to *Christy v. Miulli*, 692 N.W.2d 694, 699–700 (Iowa 2005), as consistent with its reading of *Schultze*. But in *Christy*, we merely recited the parties' agreement with *Schultze*'s conclusion that the limitations period for a wrongful-death claim begins when the plaintiff has knowledge of the death and not when the plaintiff learns of the wrongful act that caused it. *Id.* *Christy* centered on when the limitations period begins to run if a doctor

fraudulently conceals malpractice, a scenario far afield from the one presented here. *Id.* at 700.

States are divided on whether a wrongful-death claim is a distinct cause of action that does not accrue until the victim dies. *See generally* Restatement (Third) of Torts: Misc. Provisions § 70 cmt. *k* (A.L.I., Tentative Draft No. 3, 2024). States that take the approach advanced by the estate in this case generally hold that wrongful-death actions do not belong to the decedent but to the decedent's survivors. *See, e.g., James v. Phx. Gen. Hosp., Inc.*, 744 P.2d 695, 704–05 (Ariz. 1987) (en banc) ("In Arizona, the survivors' legal right is not a derivation from nor a continuation of claims which formerly existed in the injured party" and thus "[t]he wrongful death cause of action can accrue only at the death of the party injured."). States that take the opposite approach generally hold that wrongful-death actions are derivative of injury claims that belong to the decedent. *See, e.g., Est. of Genrich v. OHIC Ins.*, 769 N.W.2d 481, 489–97 (Wis. 2009) (holding that a wrongful-death claim was time-barred because it was "derivative of a medical negligence claim" and the statute of limitations for a medical negligence claim had expired).

Iowa takes the latter view. "We have characterized the wrongful death action as derivative in nature." *Wilson v. Iowa Power & Light Co.*, 280 N.W.2d 372, 373 (Iowa 1979), *overruled on other grounds by Audubon-Exira Ready Mix, Inc. v. Ill. Cent. Gulf R.R.*, 335 N.W.2d 148 (Iowa 1983) (en banc); *see also Handeland v. Brown*, 216 N.W.2d 574, 576 (Iowa 1974) (en banc) (discussing "truly derivative actions, such as wrongful death actions"); *Irlbeck v. Pomeroy*, 210 N.W.2d 831, 832 (Iowa 1973) ("A true derivative action is one which a person may institute to redress a wrong done to another. Our survival statute Code § 611.20 is an example."). As we have explained:

Unlike the wrongful death statutes in many states, Iowa's death statutes have always been of the "survival" type. Such a statute does not create a new cause of action in a decedent's survivors; rather, it preserves whatever rights and liabilities a decedent had with respect to a cause of action at the time of his death. The cause of action thus preserved is deemed to accrue to the decedent's estate representative "at the time it would have accrued to the deceased if he had survived."

*Roth v. Evangelical Lutheran Good Samaritan Soc.*, 886 N.W.2d 601, 608 (Iowa 2016) (quoting *Weitl v. Moes*, 311 N.W.2d 259, 270 (Iowa 1981) (en banc) (plurality opinion), *overruled on other grounds by*, *Audubon-Exira*, 335 N.W.2d at 152). Because the claim originates with the decedent, recoverable damages are those that the "deceased himself might have recovered had he survived the injury and brought the action, enlarged to include the wrongful death." *Fitzgerald v. Hale*, 78 N.W.2d 509, 511 (Iowa 1956).

Our approach—treating a wrongful-death claim as derivative of the decedent's own injury—stems from the claim's statutory origins. Iowa does not recognize a common law cause of action for wrongful death. *Egan v. Naylor*, 208 N.W.2d 915, 917 (Iowa 1973). The ability to bring a wrongful-death claim derives solely from statute. *Roth*, 886 N.W.2d at 608. Iowa's first wrongful-death statute was enacted in 1851. Iowa Code § 2501 (1851). Although amended over the years, "the statutes have always retained the survival principle." *Fitzgerald*, 78 N.W.2d at 510. The current iteration of the statute provides that "[a]ll causes of action shall survive and may be brought notwithstanding the death of the person entitled or liable to the same." Iowa Code § 611.20 (2026).

We thus treat death as a worsening of the victim's injury, not a new injury creating a new cause of action with a new limitations period. We have consistently rejected the argument "that 'the injury' that will trigger the statute [§ 614.1(9)] can be separated into different degrees of harm or different categories

of harm that separately give rise to different triggering dates." *Rathje*, 745 N.W.2d at 461; *see LeBeau v. Dimig*, 446 N.W.2d 800, 802–03 (Iowa 1989) (holding that the statute of limitations began to run even though the plaintiff was unaware of the full extent of his injury). The estate does not ask us to overrule any of our prior cases establishing these principles.

When the injury and its negligent cause are known during the patient's lifetime, the clock begins to run on any wrongful-death claim that results from the injury. Although the later death of the patient alters the nature of the damages available and transfers the claim to the estate representative, it does not reset the statute of limitations. Substantial evidence supports the district court's finding here that the estate discovered the injury and its cause by February 5, 2021. The two-year limitations period thus expired on February 5, 2023. The estate filed its petition on February 17, 2023. As a result, and as the district court correctly held, the action is time-barred under § 614.1(9)(*a*).

As a final matter, the estate also argues that the district court should have denied summary judgment relating to potential unnamed parties or another nurse who may have been the one alleged to have fallen on Cataldo and caused the severe fracture. But as the estate acknowledges in its brief, the district court did not rule on this issue, and the estate filed no motion to enlarge the ruling to address it. Without a district court ruling addressing the point, this issue is unpreserved for our review. *Lamasters v. State*, 821 N.W.2d 856, 862 (Iowa 2012).

We thus affirm the district court's summary judgment ruling in the defendants' favor and dismissal of the case.

**Affirmed.**